IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH NORTHERN DIVISION

| | |
|---|---|
| PATRICIA A. BURBACK,<br><br>    Plaintiff,<br><br>v.<br><br>WAL-MART STORES, INC.,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No.  1:12cv13<br><br>Magistrate Judge Paul M. Warner |

All parties in this case have consented to having United States Magistrate Judge Paul M. Warner conduct all proceedings in this matter, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1]  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  Before the court is Wal-Mart Stores, Inc.'s ("Defendant") motion for summary judgment.[2]

On November 16, 2012, the court held a hearing on the motion.[3]  At the hearing, Defendant was represented by Jeremy S. Stewart and Plaintiff was represented by Robert L. Neeley.  Before the hearing, the court carefully considered the motion, memoranda, and other materials submitted by the parties.  At the hearing, the court considered the arguments of counsel and took the motion under advisement.  Since the hearing, the court has reviewed the parties' respective arguments, as well as additional materials submitted to the court, including a

---

[1] *See* docket no. 9.

[2] *See* docket no. 15.

[3] *See* docket no. 25.

surveillance video, and is now prepared to render the following memorandum decision and order.

## RELEVANT UNDISPUTED FACTS[4]

On December 26, 2011, Patricia A. Burback ("Plaintiff") returned a sweater to the Wal-Mart store in Harrisville, Utah ("Harrisville Wal-Mart"). After she returned the sweater she accompanied her friend to the front of the store and then obtained a shopping cart in order to do some shopping. After retrieving the cart from the entry of the Harrisville Wal-Mart, Plaintiff turned right onto the main aisle in the pharmacy area commonly referred to by store employees as "action alley." As she was walking through action alley, Plaintiff's right leg slipped out from under her. She testified that she hit the floor pretty hard and broke her pelvis. Plaintiff alleges that she slipped in a wet sticky liquid substance on the floor. Plaintiff testified that she did not see the liquid on the floor prior to her fall but estimates that at the size of the spill was a couple of feet.

At the time of the occurrence, Ariel Hayes ("Ms. Hayes") was working in the pharmacy department as a pharmacy day stocker. Ms. Hayes testified that she was scanning product in the pharmacy department at the time of the incident with her back to Plaintiff. The fall was brought to Ms. Hayes's attention when another customer moved quickly to Plaintiff, and Ms. Hayes noticed the quick movement out of her peripheral vision. Ms. Hayes then rushed to Plaintiff and asked her if she needed any help. Plaintiff indicated to Ms. Hayes that she did not need any help. After lying on the ground for a while, Ms. Hayes stated that Plaintiff then used the cart to stand up on her own and immediately walked away from the scene of the incident. Ms. Hayes further

---

[4] The court has summarized the relevant undisputed facts taken from the parties' memoranda, as well as the deposition testimony submitted as an attachment to Defendant's reply memorandum. As stated below, the court does not find that there are any disputed material facts. The facts presented by counsel are largely in agreement and differ only in their presentation and application to the law.

testified that she had to look around for a while to find a very small spill and that she used two paper towels to clean up the spill after Plaintiff fell.

Christian Garcia ("Mr. Garcia"), a maintenance employee for Defendant, testified that he was in the maintenance closet when he was called to action alley near the pharmacy. Mr. Garcia testified that upon arrival, he observed a small spill of cola on the floor and some footprints. Mr. Garcia also stated that the spill of cola was difficult to see because it was very small. Mr. Garcia further testified that 10 to 15 minutes prior to Plaintiff's fall, he was mopping up footprints on aisle 9 where customers pick-up their pharmacy prescriptions. Mr. Garcia explained that this was not the same location of Plaintiff's fall but merely in the same pharmacy area and that the footprints appeared to be dirt. Mr. Garcia also stated that he did not see any liquid substance, like cola, while he was mopping up those footprints and that when he left the area he made certain the floor was dry.

Jolene Arave ("Ms. Arave"), safety lead employee, watched the action alley surveillance video from approximately 30 minutes before Plaintiff fell until after the fall. Ms. Arave testified that while she could see the footprints that Mr. Garcia mopped up 10 to 15 minutes before Plaintiff fell, she did not see anyone spill anything on the floor where Mr. Garcia was mopping before Plaintiff's accident. She also testified that she saw several customers walking in the area of the fall about one to two minutes before Plaintiff fell and that at least three of them had drinks in their hands. She further stated that one of the customers turned his head and looked down and that she concluded that one of them could have been the cause of the spill. However, she also stated that she did not see the customers spill anything or view anything on the floor in that area.

## DISCUSSION

### A. Summary Judgment Standard

"Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Gwinn v. Awmiller*, 354 F.3d 1121, 1215 (10th Cir. 2004) (quoting Fed. R. Civ. P. 56(c)). When applying this standard, courts review the factual record in the light most favorable to the nonmoving party. *Kannady v. City of Kiowa*, 590 F.3d 1161, 1168 (10th Cir. 2010) (quotations and citation omitted). A motion for summary judgment will be granted unless the nonmoving party, by affidavits or otherwise, "set[s] out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(c).

### B.  Premises Liability

A business owner cannot guarantee that "business invitees will not slip and fall" on the premises, but an owner is "charged with the duty to use reasonable care to maintain the floor of his [or her] establishment in a reasonably safe condition." *Schnuphase v. Storehouse Markets* 918 P.2d 476, 478 (Utah 1996) (quotations and citation omitted). In Utah, "[p]remises liability cases generally fall into two classes: those involving temporary conditions and those involving permanent conditions." *Price v. Smith's Food & Drug Cntrs., Inc.*, 2252 P.3d 365, 367 (Utah Ct. App. 2011). The first class "'involves some unsafe condition of a temporary nature, such as a slippery substance on the floor and usually where it is not known how it got there,'" while the second class "involves some unsafe condition of a *permanent* nature, such as: in the structure of a building, or of a stairway, etc. . . . for which [the owner] is responsible." *Id.* (quoting *Allen v. Federated Dairy Farms, Inc.*, 538 P.2d 175, 176 (Utah 1975)).

The parties agree that the liquid substance at issue in this case was a temporary unsafe condition. Under this theory, Plaintiff must first demonstrate that Defendant had either actual or

constructive knowledge of the condition because it existed long enough that it should have been discovered. *See Jex v. JRA, Inc.*, 196 P.3d 576, 580 (Utah 2008). Second, Plaintiff must then establish that once Defendant had actual or constructive knowledge of the spill, "sufficient time elapsed that in the exercise of reasonable care [Defendant] should have remedied it." *Id.* (quoting *Allen*, 538 P.2d at 176). In other words, to survive Defendant's motion for summary judgment, Plaintiff must raise a genuine issue of material fact as to (1) whether Defendant had notice of the spill and, if so, (2) whether Defendant had sufficient time after notice in which to clean up the spill. *See id.* Plaintiff fails to meet her burden as to both elements.

While Plaintiff argues that Defendant had *actual* notice of the liquid substance that caused Plaintiff to fall, a review of the evidence does not support this assertion. Plaintiff alleges that because Mr. Garcia had been mopping up footprints in the pharmacy area near the site of Plaintiff's fall approximately ten minutes before she fell, the liquid substance must have been in the area long enough for it to be tracked throughout the pharmacy. Thus, Plaintiff concludes, Mr. Garcia had actual notice of the substance in the pharmacy but failed to mop it up completely, resulting in Plaintiff's fall. There is no evidence to demonstrate that any of Defendant's employees viewed the spill, that anyone was notified of the liquid substance on the floor prior to Plaintiff's accident, or that it was tracked throughout the pharmacy. Thus, Plaintiff's assertion that Defendant had actual notice of the spill is nothing more than an unsupported legal conclusion.

Plaintiff also argues that Defendant had constructive notice of the spill because "the floor condition had existed for such a length of time that [Defendant], in the exercise of ordinary care, should have been aware of the condition."[5] Plaintiff merely suggests that because there were

---

[5] Docket no. 20 at 20.

5

footprints in front of the pharmacy, Defendant had constructive notice of the soda spill. However, to establish that Defendant had constructive notice, Plaintiff must provide more than circumstantial evidence and speculation. *See, e.g.*, *Jex*, 196 P.3d at 581. For instance, in *Jex v. JRA, Inc.*, after slipping in a puddle of water, the plaintiff argued that the deep tread on the store owner's shoes, and the fact that he shoveled snow that morning satisfied the notice requirements. *See id.* The Supreme Court of Utah disagreed and stated that the plaintiff's arguments and evidence did not "establish how long [the puddle] had been there." *Id.* The court then concluded that because time is a main factor in "imputing constructive notice[, and that] . . . conjecture and speculation is the only way to determine the length of time the puddle was on the floor, . . . it would be improper to impute constructive notice to [the defendants]." *Id. See also Lindsay v. Eccles Hotel Co.*, 284 P.2d 477 (Utah 1955) (holding that the plaintiff could not recover for a slip and fall because there was no evidence as to how and when the water was deposited on the floor in the defendant's coffee shop, "a jury cannot be permitted to speculate that the defendant was negligent"); *Koer v. Mayfair Markets*, 431 P.2d 566, 570 (Utah 1967) (holding that a plaintiff could not recover under this theory after she slipped and fell on a grape because there was no "support for the further and necessary inference that th[e] [dangerous] condition was caused by an act of the defendant, or that the defendant had actual or constructive knowledge" of it).

As noted above, Plaintiff attempts to meet her burden that Defendant had constructive notice by speculating that because there were footprints in the pharmacy area 10 to 15 minutes before Plaintiff's fall, the substance on the floor must have occurred from the same spill. Contrary to Plaintiffs assertions, however, she has not produced any evidence to demonstrate that the footprints in the pharmacy area resulted from the soda spill at issue. In fact, the evidence

6

shows that there was no connection between the spill in action alley and the footprints that Mr. Garcia saw 10 to 15 minutes before Plaintiff's fall.  The footprints Mr. Garcia cleaned up 10 to 15 minutes before the fall were on aisle 9 at the pharmacy counter where customers pick up their prescriptions and not in action alley where Plaintiff fell.  Mr. Garcia testified, and the surveillance video establishes that this was not the same location of the fall but merely the same pharmacy area separated by an aisle.  Furthermore, Ms. Arave testified that in her review of the video, she saw several customers walking in the area of the fall about one to two minutes before Plaintiff fell and that at least three of them had drinks in their hands.  She further stated that one of the customers turned his head and looked down and that she concluded that one of them could have been the cause of the spill.

As the Utah Supreme Court stated in *Martin v. Safeway Stores, Inc.*, 565 P.2d 1139, 1140 (Utah 1977), "the essential inquiry . . . is whether the defendant's employees know, or in the exercise of ordinary care should have known, that a dangerous condition existed."  *Id.*  Like the court in *Martin*, this court concludes that, as a matter of law, "reasonable minds could not differ in finding [Defendant's] employees had met their duty under the circumstance in making the [floor] reasonably safe, and that no evidence was presented as to how long the [cola] was present or that the employees of the store had or in the exercise of reasonable care could have had notice of the condition and an opportunity to correct it."  *Id.*

Because the facts establish that Defendant did not have actual or constructive notice of the spill, it is unnecessary to discuss whether Defendant had a reasonable opportunity to remedy the condition.  This court concludes that reasonable minds could not differ as to whether Defendant had notice, actual or constructive, that a temporary unsafe condition existed.

Therefore, Plaintiff has failed to demonstrate that material facts are in dispute such that there is a genuine issue for trial, and, as such, summary judgment is appropriate.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is **GRANTED**. Because this ruling disposes of all of Plaintiff's claims, the Clerk of Court is directed to close the case.

**IT IS SO ORDERED**.

DATED this 29th day of March, 2013.

BY THE COURT:

_____

PAUL M. WARNER
United States Magistrate Judge